Filed 6/26/23  P. v. Gray CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C096335 |
| Plaintiff and Respondent, | (Super. Ct. No. 00F07042) |
| v. | |
| ADAM GRAY, | |
| Defendant and Appellant. | |

A jury found defendant Adam Gray guilty of murder and found true special circumstance allegations that the murder occurred during the commission of a kidnapping and by means of lying in wait.  Defendant filed a petition for resentencing under former Penal Code[1] section 1170.95 (now section 1172.6),[2] alleging he was not the actual killer,

---

[1] Undesignated statutory references are to the Penal Code.

[2] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10).

1

did not have the intent to kill, and was not a major participant who acted with reckless indifference to human life. The trial court denied his petition, concluding the special circumstance findings rendered him ineligible as a matter of law. On appeal, defendant contends the trial court erred because the special circumstance findings do not necessarily establish he is ineligible for relief given the jury instructions provided at his trial.

We agree with defendant and find the instructions for the lying-in-wait special circumstance, and the prosecutor's arguments on the instructions, may have permitted the jury to find the lying-in-wait special circumstance allegation true without finding defendant personally had the intent to kill. As there were no other findings necessarily establishing defendant ineligible as a matter of law, we shall reverse the denial of defendant's petition and remand for further proceedings.

BACKGROUND

A.    Prior Trial

Defendant was charged with murder (§ 187, subd. (a)), kidnapping (§ 207, subd. (a)), and arson (§ 451, subd. (d)), and it was alleged the murder was committed with the special circumstances of lying in wait (§ 190.2, subd. (a)(15)) and during a kidnapping (*Id.*, subd. (a)(17)). (*People v. McLean* (Mar. 13, 2003, C039364, C039767, C040137) [nonpub. opn.] (*McLean*).)[3] In defendant's 2001 jury trial, evidence indicated defendant and two codefendants conspired to kidnap and kill their supervisor Matthew Lenabat. Lenabat's body was found in his car, which was on fire at the bottom of a dirt trail near where the codefendants had requested a tow shortly before. (*Ibid.*) Defendant told law

_____

[3] We granted the People's request to take judicial notice of our opinion affirming the judgment of conviction and sentence in defendant's direct appeal. (Evid. Code, §§ 459, subd. (a) ["The reviewing court may take judicial notice of any matter specified in Section 452"], 452, subd. (d) [permitting a court to take judicial notice of records of "any court of this state"].) We provide this summary of facts from the prior opinion in defendant's direct appeal solely for context and do not rely on these facts for our analysis or disposition here. (See § 1172.6, subd. (d)(3).)

2

enforcement several versions of what happened, including that he helped dispose of Lenabat's body and car, but he did not participate in killing Lenabat. (*Ibid.*)

Defendant was tried with one of the codefendants and each had their own jury. (*McLean, supra*, C039364, C039767, C040137.) Defendant's jury was instructed on three theories for first degree murder: willful, deliberate, and premeditated murder; lying in wait; and felony murder based on arson or kidnapping.[4] The jury was provided general aiding and abetting law under CALJIC No. 3.00 that stated: "Each principal, regardless of the extent or manner of participation is equally guilty. Principals include: [¶] 1. Those who directly and actively commit the act constituting the crime, or [¶] 2. Those who aid and abet the commission of the crime." The felony-murder instructions stated an aider and abettor of the kidnapping or arson is guilty of first degree murder.

The instructions for the special circumstances included a modified version of CALJIC No. 8.80.1. This instruction stated both circumstances, lying in wait and kidnapping, must be found true beyond a reasonable doubt but, "[a]s to the kidnapping special circumstance only, if you are satisfied beyond a reasonable doubt that the defendant actually killed the victim, you need not find that the defendant intended to kill the victim in order to find that special circumstance to be true. [¶] If you find that the defendant was not the actual killer of the victim, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor, you cannot find the kidnapping special circumstance to be true unless you are satisfied beyond a reasonable doubt that the defendant with the intent to kill aided . . . or assisted any actor in the commission of the murder in the first degree, or with reckless indifference to human life and as a major participant aided . . . or assisted the commission of the crime of kidnapping which resulted in the death of a human being." As confirmed by the draft version of the

---

[4] The facts are derived from defendant's record of conviction provided in the record on appeal.

instruction not provided to the jury, the court struck a line through the portion of the third paragraph stating "[u]nless an intent to kill is an element of a special circumstance," and replaced that language with "[a]s to the kidnapping special circumstance only."

Defendant's jury was also instructed with CALJIC No. 8.81.15.1. This instruction provided that to find the lying-in-wait special circumstance allegation true, "each of the following facts must be proved: [¶] 1. The defendant intentionally killed the victim; and [¶] 2. The murder was committed by means of lying in wait."

In the prosecutor's closing argument on first degree murder, he explained: "Some of you up there may believe that they were going to kill him, that they intended to kill him . . . . Some of you may believe, you know what, they were going to kidnap him, but I don't know what was going to happen next . . . . [I]t doesn't matter if you believe that for some reason you don't think [defendant] did the actual killing. If a kidnapping occurs that he participated in, that he aided and abetted, that he helped, that he facilitated and a death occurs intentionally, unintentionally, a person is guilty of first degree murder." He later stated: "You do not -- try to reinforce this. You do not have to be [the] actual killer to be guilty of first degree murder."

For the special circumstances, the prosecutor argued: "The special circumstances require these things, that he be the actual killer or that he aid and abet the killer, that he help, that either he and [the codefendant] did it, he did it or he helped [the codefendant] do it, and . . . if you find that he's not the actual killer, that he acted as a major participant with reckless indifference to human life." For lying in wait, the prosecutor stated, "Not the defendant, a defendant killed the victim by means of lying in wait." In rebuttal, the prosecutor noted, "You go to lying in wait, and you will see also the only hook on that instruction is the intent to kill."

Defendant's jury found him guilty of first degree murder, arson, and kidnapping. (*McLean, supra*, C039364, C039767, C040137.) The jury also found both special circumstance allegations true. (*Ibid*.) The verdict form for the lying-in-wait special

4

circumstance stated the jury found true: "The murder of MATTHEW ANDREW LENABAT was committed by defendant ADAM JEFFREY GRAY, and that the defendant intentionally killed the victim by means of lying in wait."

At defendant's sentencing on December 28, 2001, defendant's counsel contested a line in the probation report indicating defendant participated in the killing. The trial court agreed "it wasn't clear precisely as to who wrapped the rope around the victim's neck," but over defense counsel's objection modified the statement to read that "the trunk was opened and a rope was wrapped around the victim's neck, and the clarification then further is [a codefendant] and a second party, and we know that to be [the other codefendant], pulled on the rope until the victim died."

The trial court sentenced defendant to an indeterminate term of life without parole plus a consecutive term of two years. Defendant appealed and we affirmed the judgment. (*McLean, supra*, C039364, C039767, C040137.)

*B.       Defendant's Petition*

On July 8, 2021, defendant filed a petition for resentencing under former section 1170.95 (now section 1172.6). The petition alleged he was convicted of felony murder or murder under the natural and probable consequences doctrine and could not now be convicted of murder because of changes made to sections 188 and 189.

After appointment of counsel, briefing and a hearing, the trial court denied the petition. The order stated: "Based on the jury instructions given and the jury's verdict, the court finds that the jury necessarily found [defendant] was either the actual killer, acted with the intent to kill (as the [lying-in-wait special-circumstance] verdict specifically states), or was a major participant who acted with reckless indifference to human life." Thus, the trial court concluded, "[t]he jury's special circumstance finding, affirmed on appeal, renders the defendant ineligible for relief."

5

DISCUSSION

Defendant contends the trial court erred in denying his petition based on the special circumstance findings without holding an evidentiary hearing. We agree.

I

*Senate Bill No. 1437*

Senate Bill No. 1437 (Reg. Sess. 2017-2018) (Senate Bill 1437), which became effective on January 1, 2019, "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

Section 188, which defines malice, now provides in part: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2.) Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 1015, § 3.)

Senate Bill 1437 also added former section 1170.95 (now section 1172.6), which allows those convicted of felony murder or murder under the natural and probable

6

consequences theory to petition the trial court to vacate the conviction and resentence the defendant. (Stats. 2018, ch. 1015, § 4.)

"Upon receiving a petition in which the information required by . . . subdivision [(b)] is set forth . . . if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1172.6, subd. (b)(3).) "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause" and hold an evidentiary hearing on the merits of the petition. (*Id.*, subds. (c), (d).)

The prima facie inquiry under section 1172.6 subdivision (c) is "limited." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) The court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Ibid.*) Although the court may rely on the record of conviction in determining whether defendant has made a prima facie showing, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972.)

II

*Analysis*

Defendant argues neither special circumstance finding renders him ineligible for resentencing as a matter of law for several reasons. First, he contends the lying-in-wait special circumstance instruction "omitted the essential element of intent to kill." He explains this was possible because under the modified CALJIC No. 8.80.1 instruction given, if the jury could not find defendant was the actual killer, it explained only the accomplice mental state required for the kidnapping special circumstance. Second, he contends the California Supreme Court in *People v. Strong* (2022) 13 Cal.5th 698 invalidated disqualifying defendants at the prima facie stage based on findings they were a major participant who acted with reckless indifference to human life before *People v.*

7

*Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522. Third, the trial court's modification to the probation report established defendant was not the actual killer. Thus, the jury did not necessarily make a finding rendering him ineligible for relief as a matter of law and therefore he made a prima facie case for relief, necessitating reversal and a remand for an evidentiary hearing.

The People agree defendant can no longer be ineligible based on a finding he was a major participant who acted with reckless indifference to human life under the kidnapping special circumstance. However, the People contend the lying-in-wait special circumstance instruction required the jury to find defendant acted with the intent to kill. They argue the CALJIC No. 8.80.1 instruction properly did not include lying in wait because it requires an intent to kill, "as was noted in the given CALJIC No. 8.81.15.1 instruction." This was also stated in the signed verdict form. Thus, according to the People, the jury's finding that defendant intentionally killed the victim renders him ineligible as a matter of law.

As noted above, for defendant to be eligible for relief under section 1172.6, he could not have been the actual killer, could not have acted with the intent to kill, and could not have been a major participant in the felonies who acted with reckless indifference to human life. Defendant's first degree murder conviction is not conclusive on the issue of intent to kill because defendant was charged with felony murder and the jury was so instructed. Though premeditated murder and lying-in-wait murder require an intent to kill, felony murder at the time of defendant's trial permitted liability for defendant's intentional participation in the felony without malice. And, the jury did not indicate which of the three first degree murder theories it found defendant guilty. Thus, for defendant to be ineligible as a matter of law, and for the trial court's finding to be valid, the special circumstance findings must necessarily establish the jury found defendant possessed one of the three mental states still valid after Senate Bill 1437. We find none of these three mental states were established as a matter of law.

8

First, there is no finding in the record establishing defendant was the actual killer, and the People do not contend otherwise. We need not discuss whether we may consider the trial court's modifications to the probation report because none of the verdicts nor instructions required the jury to find defendant was the actual killer. There is also nothing else in the record of conviction that is properly considered at the prima facie stage establishing he was the actual killer. To the contrary, the prosecutor emphasized in closing the jury could find defendant guilty of both murder and the special circumstances as an accomplice.

Second, we agree that defendant cannot be ineligible as a matter of law under the major participant theory. The jury found defendant was, at a minimum, a major participant who acted with reckless indifference to human life when he participated in the kidnapping by finding true the kidnapping special circumstance. However, this was prior to our Supreme Court's opinions in *People v. Banks, supra*, 61 Cal.4th 788 and *People v. Clark, supra*, 63 Cal.4th 522, which "both substantially clarified the law governing findings under [section] 190.2, subdivision (d)" and what constitutes a major participant and acting with reckless indifference to human life. (*People v. Strong, supra*, 13 Cal.5th at pp. 706-707.) Our Supreme Court in *Strong* concluded, after the trial court denied defendant's petition, such findings before *Banks* and *Clark* cannot render a section 1172.6 petitioner ineligible for relief as a matter of law at the prima facie stage. (*Strong*, at p. 721.)

This leaves intent to kill. The central dispute is whether the lying-in-wait special circumstance allegation instruction and verdict necessarily established the jury found defendant had an intent to kill. The lying-in-wait special circumstance statutory provision, section 190.2, subdivision (a)(15), is satisfied if: "The defendant intentionally killed the victim by means of lying in wait." Section 190.2, subdivision (c) extends special circumstance liability to "[e]very person, not the actual killer, who, with the intent to kill, aids . . . or assists any actor in the commission of murder in the first degree."

9

Therefore, "[a] lying-in-wait special circumstance can apply to a defendant who, intending that the victim would be killed, aids and abets an intentional murder committed by means of lying in wait. [Citations.] In this factual setting, the questions are whether defendant, with the intent to kill, aided and abetted the victim's killing, and whether the actual killer intentionally killed the victim by means of lying in wait." (*People v. Johnson* (2016) 62 Cal.4th 600, 630.)

Here, the record does not conclusively establish the jury was instructed it needed to find defendant had the intent to kill to be an accomplice for a lying-in-wait murder. The CALJIC No. 8.81.15.1 instruction informed the jury it had to find "[t]he defendant intentionally killed the victim." And the verdict form mirrored this language. This is the exact language of section 190.2, subdivision (a)(15), for the actual killer. But the jury was permitted to find this circumstance true without finding defendant was the actual killer. In discussing the CALJIC No. 8.81.15.1 instruction during closing argument, the prosecutor explained "[n]ot the defendant, *a defendant* killed the victim by means of lying in wait," meaning the instruction applied even if another defendant intentionally killed the victim. (Italics added.) This was also consistent with the accomplice liability instructions provided under CALJIC No. 3.00 and felony murder. Thus, the jury could have found the lying-in-wait special circumstance allegation true under the CALJIC No. 8.81.15.1 instruction given if defendant aided another defendant who intentionally killed the victim.

Because there was evidence and argument defendant was an accomplice, the jury had to be instructed on the intent to kill requirement for an accomplice under section 190.2, subdivision (c). (*People v. Nunez and Satele* (2013) 57 Cal.4th 1, 45 [finding where there is evidence the defendant was an accomplice courts must instruct, and the jury must find, the appropriate mental state required for accomplices]; *People v. Jones* (2003) 30 Cal.4th 1084, 1117-1118 [same].) The intent to kill requirement for an accomplice can be provided by a CALJIC No. 8.80.1 instruction for the special

10

circumstances if the defendant was not the actual killer. But that instruction here was specifically limited to the kidnapping special circumstance. And this instruction stated it could be found true for an accomplice who was a major participant in the kidnapping who acted with reckless indifference to human life. The jury therefore was never provided with a specific instruction that an accomplice to lying-in-wait murder must personally have the intent to kill.

This deficiency may have been overcome had the trial court not stricken the line in CALJIC No. 8.80.1's third paragraph, "[u]nless an intent to kill is an element of a special circumstance." But paragraph four of CALJIC No. 8.80.1 is the central means to explain an intent to kill is required for an accomplice for a special circumstance. The version the trial court modified at trial included a global bracket starting at, "or with reckless indifference to human life and as a major participant." The language in the global bracket implies this final clause appending the major participant theory is optional and so the instruction can be written to conclude at "defendant with the intent to kill" aided or assisted. This would permit a complete and accurate instruction on the accomplice liability for lying in wait by making explicit an accomplice must aid with the intent to kill. Other courts have so modified this instruction. (See *People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 794, fn. 53 [quoting a version of CALJIC No. 8.80.1 the trial court gave for a lying-in-wait special circumstance that included a modified paragraph four stating the defendant must have, "with the intent to kill aided . . . or assisted any actor in the commission of the murder in the first degree"].)

The prosecutor's closing arguments also did not clarify the intent requirement and may have done the opposite. He stated, "the special *circumstances* require these things," which included "if you find that he's not the actual killer, that he acted as a major participant with reckless indifference to human life." (Italics added.) There was no indication this was limited to the kidnapping special circumstance, and instead treated the "special circumstances" collectively. Although the prosecutor argued in rebuttal that for

11

the lying-in-wait special circumstance, "you will see also the only hook on that instruction is the intent to kill," he never clarified, just as the instructions failed to clarify, *defendant* needed to possess the intent to kill, not just the actual killer. The kidnapping special circumstance did not require the actual killer to have had the intent to kill for an accomplice to still be found liable. Thus, the prosecutor's statement is ambiguous as to whether the "hook" was for the actual killer to have the intent to kill, the accomplice to have the intent to kill, or both.

In short, the jury was not instructed in a manner to establish, as a matter of law, it found defendant had the intent to kill. There was no instruction explicitly stating an accomplice must personally have the intent to kill for the lying-in-wait special circumstance, and there were also additional facts muddying the waters: the prosecutor implied the CALJIC No. 8.80.1 instruction and its major participant language may apply to the lying-in-wait special circumstance; the prosecutor argued only "a defendant" had to intentionally have killed the victim; and there were other aiding and abetting instructions permitting murder liability without an intent to kill. In this context, it is possible the jury may have incorrectly believed it could find the special circumstance true as long it found any defendant intentionally killed the victim without defendant himself having the specific intent to kill.

Typically, when an instructional error occurs, a harmless error analysis is utilized. Because the other instructions do not necessarily establish an intent to kill for this defendant, it would require us to determine whether the "evidence of the defendant's intent to kill is overwhelming and the jury ' "could have had no reasonable doubt" that the defendant had the intent to kill.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 929.) This kind of evidentiary analysis is improper at section 1172.6's limited prima facie stage. Thus, we must find the record of conviction does not establish as a matter of law defendant acted with a mental state sufficient to render him ineligible for relief under section 1172.6. The trial court consequently erred in finding defendant ineligible for

12

relief at the prima facie stage and we shall reverse and remand for the trial court to hold an evidentiary hearing under section 1172.6.

DISPOSITION

The order denying defendant's petition for resentencing is reversed.  On remand the trial court is to issue an order to show cause and to conduct further proceedings in accordance with section 1172.6.

_____/s/_____
BOULWARE EURIE, J.

We concur:

_____/s/_____
RENNER, Acting P. J.

_____/s/_____
HORST, J.*

---

* Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.